
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

FILED
JAN 1 7 2018
Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| LAUREN F. SCHWARTZ, M.D. on assignment of AMANDA S., <br><br>Plaintiff, <br><br>vs. <br><br>ASSOCIATED EMPLOYERS GROUP BENEFIT PLAN AND TRUST, and EMPLOYEE BENEFIT MANAGEMENT SYSTEMS, <br><br>Defendants. | CV 17-142-BLG-SPW <br><br>OPINION AND ORDER |

Before the Court is a motion to dismiss filed by Defendant Associated Employers Group Benefit Plan ("AEG") (Doc. 12) and a motion to dismiss filed by Defendant Employee Benefit Management Systems ("EBMS") (Doc. 10). For the foregoing reasons, the motions are granted in part and denied in part.

I. **Facts alleged in complaint**

Lauren Schwartz is a neurosurgeon from New Jersey. (Doc. 1 at ¶¶ 1, 10). In July 2013, while volunteering at a Montana Camp Mak-A-Dream, she befriended a young woman named Amanda. (Doc. 1 at ¶ 8). As a child, Amanda was diagnosed with a brain tumor which required surgery and a brain shunt. (Doc. 1 at ¶ 9). Amanda asked Schwartz to be her doctor because her Montana doctor was not experienced with her condition. (Doc. 1 at ¶ 10). Schwartz believed

1

Amanda would be better off receiving treatment closer to home. (Doc. 1 at ¶ 14). Schwartz discussed insurance coverage with Amanda's mother, who stated Amanda was insured through EBMS. (Doc. 1 at ¶ 13). Schwartz reached out to several doctors on Amanda's behalf but they either failed to respond or declined to provide treatment. (Doc. 1 at ¶¶ 14-19).

In March 2014, Amanda's condition worsened. (Doc. 1 at ¶ 20). Out of fear Amanda was dying, Amanda's mother contacted Schwartz. (Doc. 1 at ¶ 20). Schwartz told Amanda's mother to contact Amanda's doctor and request a CT Scan to determine if there was bleeding in Amanda's head. (Doc. 1 at ¶ 21). After Amanda underwent a CT Scan, a nurse called Schwartz and said Amanda's condition was "out of their league." (Doc. 1 at ¶ 22). Schwartz contacted Hackensack University Medical Center in New Jersey. (Doc. 1 at ¶ 23). Schwartz explained Amanda had difficulty receiving treatment close to home and needed emergency treatment. (Doc. 1 at ¶ 23). Hackensack agreed to accept Amanda. (Doc. 1 at ¶ 23).

Schwartz contacted EBMS and stated Amanda needed to travel to New Jersey on an emergency flight under medical observation. (Doc. 1 at ¶ 24). EBMS administers claims under a healthcare plan provided by AEG. (Doc. 1 at ¶¶ 2-3). Schwartz explained to EBMS that she does not accept Medicare or Medicaid and was relying on EBMS to cover Amanda's treatment, including surgery. (Doc. 1 at

¶ 24). EBMS told Schwartz Amanda's treatment would be reimbursed in full. (Doc. 1 at ¶¶ 24-25).

Amanda was flown to New Jersey on an emergency flight. (Doc. 1 at ¶ 26). Upon landing, Amanda was rushed to the Hackensack emergency room in unstable condition. (Doc. 1 at ¶¶ 26-27). Schwartz then took Amanda to the operating room and performed brain surgery. (Doc. 1 at ¶¶ 28-30). A few hours after surgery, Amanda developed acute severe meningitis and began having seizures. (Doc. 1 at ¶ 30). Amanda was returned to the operating room for more surgery. (Doc. 1 at ¶¶ 30-31). Due to the extensive surgeries and complications, Amanda underwent a detailed course of treatment for the next month. (Doc. 1 at ¶ 31). During Amanda's rehabilitation, Schwartz spoke with EBMS about paying for Amanda's treatment. (Doc. 1 at ¶ 33). EBMS again stated Schwartz would be reimbursed in full. (Doc. 1 at ¶ 33).

At some point on the day Amanda arrived at Hackensack, she signed Hackensack's general admission consent form. (Docs. 1 at ¶ 34; 1-2). The form had Schwartz's and Amanda's names at the top. (Doc. 1-2). Amanda initialed the form at the bottom. (Doc. 1-2). The form's assignment of benefits clause stated "I authorize my health insurance benefits to be paid directly to Hackensack University Medical Center." (Doc. 1-2). The form's financial agreement clause

stated "I understand that the Medical Center bill applies only to hospital charges and does not include any charges or fees by physicians." (Doc. 1-2).

Schwartz submitted a bill to AEG and EBMS in the amount of $476,448.00 for Amanda's treatment. (Doc. 1 at ¶ 35). AEG and EBMS paid Schwartz $31,946.51, but refused to pay the rest. (Docs. 1 at ¶¶ 37, 40). Schwartz appealed the adverse decision but AEG and EBMS continued to refuse to pay the remainder. (Doc. 1 at ¶¶ 38-40). Schwartz filed suit to collect the remaining balance. (Doc. 1).

Schwartz's complaint contains three counts. Under count one, Schwartz claims she is entitled to the remaining balance because Amanda assigned Schwartz the rights to medical payments for the treatment. Under count two, Schwartz claims she is entitled to the remaining balance because EBMS promised Schwartz would be reimbursed in full for the treatment and Schwartz relied on that promise to her detriment. Under count three, Schwartz claims she is entitled to the remaining balance because AEG and EBMS breached their fiduciary duties to Amanda. The parties have stipulated to the dismissal of count three. The parties have also stipulated that Amanda's insurance policy is governed by the Employee Retirement Income Security Act (ERISA).

## II. Law

A motion to dismiss for failure to state a claim is governed by Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint is construed in the light most favorable to the non-moving party. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012).

In determining a motion to dismiss, a district court may consider documents attached to the complaint and documents "whose contents are alleged in a complaint and whose authenticity no party questions." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## III. Discussion

AEG and EBMS argue count one should be dismissed because Amanda assigned Hackensack, not Schwartz, the rights to medical payments for treatment. EBMS argues it should be dismissed as a party because it is a third-party plan

administrator. AEG and EBMS argue count two should be dismissed because it is a state law claim preempted by ERISA.

### A. Construing the complaint in Schwartz's favor, Schwartz's name on the form and the circumstances of the agreement make it plausible Amanda assigned Schwartz the rights to medical payments

ERISA provides a federal cause of action to enforce provisions of an ERISA plan. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1288 (9th Cir. 2014) (citing 29 U.S.C. § 1132(e)(1)). Only plan participants, beneficiaries, fiduciaries, and the Secretary of Labor are empowered to bring a civil action under ERISA. *Spinedex*, 770 F.3d at 1288-1289. However, plan participants and beneficiaries may assign their rights to their health care provider. *Misic v. Bldg. Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1378-1379 (9th Cir. 1986). As an assignee, the provider has standing to assert the claims of the assignor. *Misic*, 789 F.2d at 1379. An ERISA plan or plan administrator may not assert in court for the first time a reason for the denial of benefits that it knew of or should have known of during the administrative process. *Spinedex*, 770 F.3d at 1296.

When interpreting an assignment of rights under an ERISA plan, courts apply ERISA, federal common law, and contract principles derived from state law. *See Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007); *Spinedex*, 770 F.3d at 1292 (interpreting assignment of rights under federal common law);

6

*Eden Surgical Center v. B. Braun Medical, Inc.*, 420 Fed.Appx. 696, 697 (9th Cir. 2011) (same). Generally, a contract is the manifestation of mutual assent on the part of two or more persons. Restatement (Second) of Contracts § 3. A contract may be stated in words either oral or written, or may be inferred wholly or partly from conduct. Restatement (Second) of Contracts § 4. The terms of a contract should be give their plain and ordinary meaning. *Gilliam*, 488 F.3d at 1194. When disputes arise, courts should first look to explicit language of the agreement to determine, if possible, the clear intent of the parties. *Gilliam*, 488 F.3d at 1194. However, the intended meaning of "even the most explicit language" can be understood only in light of the circumstances and context of the agreement. *Gilliam*, 488 F.3d at 1194; *see* Restatement (Second) of Contracts § 202(1) ("Words and other conduct are interpreted in the light of all the circumstances, and if the principle purpose of the parties is ascertainable it is given great weight.").

The motions to dismiss count one present a close a call. Under general contract principles, it's questionable whether the form even constitutes a contract between Amanda and Schwartz. Other than Schwartz's name at the top, the form otherwise appears to be a contract between Amanda and Hackensack. However, construing the complaint in Schwartz's favor, the Court holds it is plausible Amanda assigned Schwartz the rights to medical payments for two reasons.

First, it is plausible Amanda assigned Schwartz the rights to medical payments either with the form or through an implied or partially integrated agreement, of which the form may constitute evidence. The complaint alleges Amanda was flown to New Jersey because of a medical emergency, upon landing was rushed to the emergency room in unstable condition, and was then taken to the operating room for brain surgery. Schwartz performed complicated brain surgery and provided complicated treatment for the next month. The form assigning rights to medical payments contains Schwartz's and Amanda's names at the top and Amanda's initials at the bottom. Schwartz had previously discussed compensation with Amanda's mother and with EBMS. Considering the emergency circumstances of the alleged agreement, *Gilliam*, 488 F.3d at 1194, and the fair inference that Amanda intended her doctor to be compensated for life-saving brain surgery, *Davis*, 691 F.3d at 1159, it is plausible that Amanda and Schwartz intended to assign Schwartz the right to payment for the emergency brain surgery and treatment provided—either through the form itself or as a partially integrated or implied agreement, of which the form may constitute evidence.

Second, it is plausible AEG and EBMS waived the right to challenge the assignment of rights to medical payments. The complaint alleges Schwartz requested reimbursement numerous times, including exhausting the administrative process. The complaint further alleges Schwartz was at one point paid $31,946.51.

The complaint does not state why AED and EBMS denied Schwartz's claim for reimbursement. Construing these allegations in Schwartz's favor, it is plausible that AED and EBMS are asserting in court for the first time that the reason for the denial of benefits was an invalid assignment of rights. *Spinedex*, 770 F.3d at 1296. The motion to dismiss count one is denied.

> **B. Construing the complaint in Schwartz's favor, it is plausible that EBMS is liable as a fiduciary of the plan because it may exercise discretionary authority or control in the administration of the plan**

Under ERISA, suits to recover benefits may be brought "against the plan as an entity and against the fiduciary of the plan." *Spinedex*, 770 F.3d at 1297 (citing *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1194 (8th Cir. 1998)). Defendants for improper denial of benefits may include ERISA plans, plan administrators, insurers or other entities responsible for payment of benefits, and de facto plan administrations that improperly deny or cause improper denial of benefits. *Spinedex*, 770 F.3d at 1297 (citing *Cyr v. Reliance Standard Life Insurance Co.*, 642 F.3d 1202, 1203-1204 (9th Cir. 2011) (en banc)). A fiduciary is any entity that "exercises discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . [or] has any discretionary authority or discretionary responsibility in the administration of such plan." *Spinedex*, 770 F.3d at 1298

(citing 29 U.S.C. § 1002(21)(A) and *Lifecare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 844-845 (5th Cir. 2013)).

Here, construing the complaint in Schwartz's favor, it is plausible EBMS exercised discretionary authority or control over the plan. The complaint alleges EBMS repeatedly assured Schwartz she would be compensated for treating Amanda, EBMS denied Schwartz's request for compensation multiple times, EBMS denied Schwartz's administrative appeals, and EBMS at some point paid Schwartz $31,946.51. Accepting these facts as true, it is plausible EBMS has or had discretionary authority in the administration of the plan. The motion to dismiss EBMS as a party is denied.

## C.   Construing the complaint in Schwartz's favor, it is plausible that Schwartz's promissory estoppel claim is not preempted because Schwartz is an independent third-party claiming damages for alleged misrepresentations

ERISA contains two primary preemption provisions: complete preemption under 29 U.S.C. § 1132(a) and conflict preemption under 29 U.S.C. § 1144(a). *Marin General Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944-945 (9th Cir. 2009). AEG and EBMS argue Schwartz's promissory estoppel claim is preempted under conflict preemption.

Conflict preemption exists when a state law claim "relates to" an ERISA plan, in which case, the state law claim may not be brought. *Marin*, 581 F.3d at 946. A claim "relates to" an ERISA plan if it has either a "reference to" or

"connection with" such a plan. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081-1082 (9th Cir. 2009) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)).

To determine whether a claim has a "reference to" an ERISA plan, courts ask whether (1) the claim acts immediately and exclusively upon ERISA plans or (2) the existence of ERISA plans is essential to the claim's operation. *Paulsen*, 559 F.3d at 1082. To determine whether a claim has a "connection with" an ERISA plan, courts look both to the objectives of ERISA and the nature and effect of the claim on an ERISA plan. *Paulsen*, 559 F.3d at 1082.

AEG and EBMS cite *DeVoll v. Burdick Painting, Inc.*, 35 F.3d 408, 412 (9th Cir. 1994), for the proposition that the Ninth Circuit has categorically ruled state law promissory estoppel claims are preempted. In *DeVoll*, a plan participant sued his employer and ERISA plan for promissory estoppel. 35 F.3d at 411. The Ninth Circuit held the plan participant's promissory estoppel claim was preempted, stating "ERISA preempts common law theories of breach of contract implied in fact, promissory estoppel, estoppel by conduct, fraud and deceit, and breach of contract." *DeVoll*, 35 F.3d at 412.

If Schwartz was a plan participant, the Court would agree with AEG and EBMS that her promissory estoppel claim is preempted under *DeVoll*. However, *DeVoll* is inapplicable to Schwartz's promissory estoppel claim because Schwartz

11

is not a plan participant. In regard to her promissory estoppel claim, she is an independent entity claiming damages, not a plan participant claiming ERISA benefits.

The distinction is important because "the basic thrust of the [conflict preemption clause] is to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Paulsen*, 559 F.3d at 1082 (internal quotation and citation omitted). "Congress did not intend ERISA to preempt areas of traditional state regulation that are quite remotes from the areas with which ERISA is expressly concerned—reporting, disclosure, fiduciary responsibility, and the like." *Paulsen*, 559 F.3d at 1082. The Ninth Circuit often employs a "relationship test" to determine conflict preemption, under which a state law claim is preempted when the claim bears on an ERISA-regulated relationship such as between plan and plan member. *Paulsen*, 559 F.3d at 1082.

As the Ninth Circuit and several others have explained, a third-party provider's claim for damages does not implicate a relationship Congress sought to regulate under ERISA. *See The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1008 (9th Cir. 1995); *Memorial Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990); *Fugarino v. Hartford Life and Acc. Ins. Co.*, 969 F.2d 178, 186 (6th Cir. 1992); *Hospice of Metro Denver, Inc v. Group Health Ins.*, 944 F.2d 752, 756 (10th Cir. 1991).

In situations nearly identical to Schwartz's claim for promissory estoppel, the Ninth Circuit has held ERISA does not preempt claims by a healthcare provider who sues an ERISA plan under state law promissory estoppel for misrepresentations about payment for medical treatment. *Meadows*, 47 F.3d at 1008-1010, and *Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*, 321 Fed.Appx.563 (9th Cir. 2008).

In *Meadows*, the insurer of an ERISA plan repeatedly confirmed to a healthcare provider that it provided coverage for two prospective patients. 47 F.3d at 1007-1008. The healthcare provider relied on the insurer's representation and treated the two patients. 47 F.3d at 1008. The insurer subsequently refused to pay for the two patients' treatment. 47 F.3d at 1008. The healthcare provider sued the insurer under state law promissory estoppel. 47 F.3d at 1008. The Ninth Circuit held ERISA did not preempt the claim because the healthcare provider was an independent third-party claiming damages for alleged misrepresentations. 47 F.3d at 1011.

The Ninth Circuit reaffirmed *Meadows*' holding in *Catholic Healthcare*. In *Catholic Healthcare*, a healthcare provider sued an ERISA plan for state law promissory estoppel based on alleged misrepresentations about payment for medical treatment. 312 Fed.Appx.563 at 1. The Ninth Circuit held ERISA did not

preempt the claim because the healthcare provider was an independent third-party claiming damages for alleged misrepresentations. 312 Fed.Appx.562 at 1-2.

Here, the complaint alleges EBMS represented to Schwartz at least three different times that it would reimburse her in full for Amanda's treatment and that Schwartz relied on those representations when she treated Amanda. The complaint does not state Schwartz and AEG and EBMS had any contractual relationship under the ERISA plan, or even discussed the ERISA plan. Schwartz's claim is based solely on her reliance on EBMS's alleged representations that she would be reimbursed in full for Amanda's treatment. A straightforward application of *Meadows* and *Catholic Healthcare* leads to the conclusion that Schwartz's promissory estoppel claim is not preempted because she is an independent third-party claiming damages for alleged misrepresentations.

However, complicating the analysis is that Schwartz is attempting to bring both a derivative suit under ERISA and an independent claim for damages. The healthcare providers in *Meadows* and *Catholic Healthcare* did not make a claim for ERISA benefits under an assignment of rights and instead pursued only state law claims independent of the ERISA plan. It's unclear whether a healthcare provider is required to pursue one route or the other. The decision of the healthcare providers in *Meadows* and *Catholic Healthcare* appears to be strategic rather than forced; the healthcare providers wanted to remain in state court. In

*Catholic Healthcare*, the Ninth Circuit suggested the healthcare provider "could have brought an ERISA claim derivatively as an assignee," but did not state what legal effect that decision would have on the promissory estoppel claim. At least one district court has read *Meadows* and *Catholic Healthcare* to allow a healthcare provider to proceed simultaneously with a derivative claim for ERISA benefits and an independent claim for state law promissory estoppel. *Nationwide DME, LLC v. Cigna Health and Life Insurance Company*, 136 F.Supp.3d 1079 (D. Ariz. 2015).

Absent precedent prohibiting otherwise, the Court will allow Schwartz to proceed on her state law promissory estoppel claim because the facts as alleged in the complaint support the claim and *Meadows* and *Catholic Health* expressly hold ERISA does not preempt promissory estoppel claims by independent third-parties claiming damages for misrepresentations. The motion to dismiss count two is denied.

## IV. Conclusion and Order

For the foregoing reasons, IT IS HEREBY ORDERED:

1. The motions to dismiss are DENIED as to Counts 1 and 2.
2. The motions to dismiss are GRANTED as to Count 3.

DATED this 16th day of January, 2018.

/s/ Susan P. Watters
SUSAN P. WATTERS
United States District Judge